All right, our last case is United States v. Barnes. Mr. Cormier, may it please the court, my name is Dana R. Cormier and I'm here on behalf of the appellant Robert Barnes. There were several issues raised in the briefs. The first issue that I that was raised was the application of the career offender enhancement to Mr. Barnes. I believe that that in the Dickinson case in the Maryland Court of Appeals answer to the certified question in that case settles that issue along with the other three cases this court has determined that Maryland does, the Maryland robbery does count as a crime of violence for the career offender category. So based on those decisions and specifically on the Maryland Court of Appeals answer to the certified question, I'm not going to beat that dead horse and I'd like to focus on the other two issues that were raised. The next issue that was raised in the briefing was the whether the district court erred in failing to suppress Mr. Barnes statement on September 12, 2018 in the emergency room. There are two issues there. The first issue is whether Mr. Barnes was in custody for purposes of Miranda and the second issue is whether if he was not, the court can still consider whether the statement was involuntary and suppressible for those grounds. On the Miranda issue, the parties have discussed... Can I ask you a framing question about the Miranda issue? Sorry? Can I ask you a framing question about the Miranda issue? So as I understand what happens here is the doctor asks him a question, he doesn't answer and then the other individual says answer the doctor's question, right? And says some more. But do you contend that the doctor's question is not covered by Miranda? Because he's not in custody or because it wasn't interrogation? Looking at the case law, specifically Howe, Jamison and Connolly, I think the purpose of the restraints at that time, he was not being interrogated. Well no, it's okay. If you can, I'd like a crisp answer to is the reason the doctor's question is not covered is because he wasn't in custody at the time of the doctor's question or because the doctor's question is not an interrogation? Both. I don't think... Well the first of those strikes me as bizarre because it seems totally weird to say that he's not in custody and then seconds later he is in custody. That seems weird. Well I'll try to explain why I, how I get there under the case law and it may be, it may be weird and I think it might be but I think we can get there under the case law. We know that from the Howe's case, the Supreme Court case, when just because a person is in prison, his status as a people strapped to the same bed and seconds later he's not in custody, he's not in custody and seconds later he is. Do you know any case with a fact pattern remotely like that? No, but I know there are cases that consider that suppressed statements made in emergency room situations and I know cases that, that the, that's the, let's see, in the Jamison, the Jamison case, the defendant was not a prisoner but he arrived at the ER with a gunshot wound. He was reported, he had reported to the police officer he had been shot. The police were investigating that report when they interviewed him and they were questioning him as a victim witness in an investigation that the defendant had, was voluntarily participating in. So in that situation, while they were questioning him while he was in the emergency room, they found that it was, that he was not in custody for those purposes, for purposes of that because he was only participating in the investigation. Was the prison guard that was with him Woodard, was he So the distinction I would make from Jamison and Connelly, I think that with the court and the court analysis in Jamison and Connelly, Connelly is more similar to the facts that we have in this case because it was a prisoner that was being treated for a stab wound in, in the prison. But again, in both those cases, it was critical to the court's analysis that the defendant was participate, willingly participating in the questioning. It instigated by Can I, maybe, at what point was he interrogated? What counts, put custody to one side for a minute. Where is the interrogation? I believe that when the officer or the corrections officer who was guarding him says, now I'm not sure, I have to double check the record where the officer tell him or tell me. I think there's a, I was under the impression that the officer tell me what you ingested. Does it matter for whether or not it was an interrogation in your opinion? Well, maybe. But I think at that point, because we know, that I thought he said you better tell him. Okay. I'm going to look. But I hear you have a situation where this, this Mr. Barnes almost died because he swallowed all these baggies of heroin or meth or whatever it was. They get him to the they don't know whether they're going to burst and he'll die right there on the table or what's going to happen. So, I mean, in that context, why is what the prison guard advised him an interrogation? Because, well, this kind of overlaps with the, some of the points I would want to make in the, in the voluntariness argument as well. The, what was it? I'm going to, I'm going to, this is part of your answer. Here's, here's what he, Woodard testified to. So I told him, this is Woodard speaking. So I told him, if you don't tell him, which I assume would be the doctor, and you don't pass it. So it looks like he was referring him to answer the doctor's question. Okay. But at that point, I believe that that, that, what, what Woodard told Barnes at that time was not accurate. Because at the, what the, nothing in the records established at that point. At that point, Mr. Barnes was alert. He was conscious. He was participating. There was no immediate threat. The ER, the ER doctors knew that there was a substance in there based on the x-rays. They knew that there were previous statements regarding having ingested and passed five other drugs. How do you know there's not an immediate threat? I mean, it just seems to run against common sense to say, you know, somebody's got all these baggies of heroin in their stomach and a couple of them have already burst and almost killed him. Tell me what's inaccurate here. Well, the, the, none of the ER records and the ER doctor testified that surgery was eminently required. They went through, they had a procedure. They knew what they were going to do. They didn't say it was eminently required. He says if you don't pass it, it would be. What, what's... That's what Woodard said, but there's nothing, the doctors never said that. There was nothing in the record that they were contemplating surgery from the medical records. I mean, it doesn't kind of stand to reason. And I guess I, I'm asking this because it seems like it would also go to the district court's finding that under the circumstances, this wasn't coercive. I mean, if they're in him and he doesn't pass them and if they burst, he'll die. What are the other alternatives other than going in there and getting them out? I guess the other, no, well, the alternatives, there was no surgery. The alternative was to do what they did, give him the, the soap set enema, have him pass the, the substance. Right, but what the guard said is if that doesn't work, then, and Judge Harris's question again, what would be the option at that point? That we know it worked. I guess what I, whether it was, whether in fact, I'm not a doctor. I don't know the answer to that question, but in those circumstances, I guess what I am driving at is the officer introducing the prospect of, it's not like the officer is introducing the prospect of surgery out of nowhere. Like a reasonable person under the circumstances would probably be expected to know that one of the things that might happen if you don't pass these balloons is that they're going to have to go in and get them. So I'm not sure how much it adds to what's already just coercive about the circumstances themselves. What does it add, I would ask, what does it add whether he, whether Mr. Barnes answers the question or not? I mean, if that's the, if that's the course of action that's going to take place, and I don't, I don't concede that the medical records necessarily support that maybe a reasonable person would expect surgery. Well, he just responded to Narcan, which only works on opiates. And I think we could almost take judicial notice that he didn't swallow balloons with Cheerios. So there's something else in there. And I guess I'm just not following the stream of your argument here. I just think it's, it's markedly different when, because we know that Mr. Barnes had already made the decision not to answer the treating physician's question on that. We know that. And I think it's, it's different when a corrections officer comes in and says, you better say this because they're going to, it implies that there's some sort of medical emergency, which up to that point, there really didn't appear to be. In the emergency, the balloon broke and he almost died. I guess, I mean, I, obviously surgery is a big deal. And if you have an officer like in the station house interrogating someone across the table, and there's no indication of any medical problem, and then he says, if you don't answer my questions, I'm going to take you to the hospital and have you operated on. My guess is we would find that coercive, but the circumstances matter. And it just, you know, I'm really wrestling. Like this seems like very coercive circumstances because he is in these exigent medical circumstances that, but I'm struggling to figure out how, what the officer said adds in anything but the most marginal way to what is already a very coercive situation. I'm not sure that I agree with you that at that point, there were exigent medical circumstances. The balloons are still in him and one has already burst, right? Yeah, one, one, yeah, but. He was exigent. He was alert. He was conscious. Well, I know he survived the first rush with an overdose, but he's got two more. He was in the emergency room. The doctor was, they were preparing enema. They had the records there. It didn't, I respectfully submit, I simply can't concede that it was an emergency situation at that point. So, I submit that when, when Officer Wooder told him there was an, it was a medical emergency or implied that there was a medical emergency and surgery would be required. I don't think that the record or Dr. Reynolds' testimony at that point suggests at that point that there was, they had a plan. They knew what, what they were, what might be in there and they were going to, they were going to go with the enema, which worked and he was home that day. So, I'm not sure that there was the medical emergency that a doctor, excuse me, that, that Officer Woodard implied. In your remaining time, I'd like to go to your sufficiency challenge. Could you just clarify for me precisely the nature of the sufficiency challenge you're making? Well, it's a difficult one. I take, I know that, I know there's case you don't need medical, you don't need chemical testing. You don't need, you can have lay testimony. I submit that. But so, the, the, the sufficiency challenge you're making is a sufficiency challenge to the sufficiency of the evidence that they were narcotics. That's the sufficiency challenge. That the things in the balloons were narcotics. Wait, wait, wait, hang on. I really want to clarify this too. Please let me. So, your sufficiency challenge is to the failure to test the substances from the balloons they was meth and one of them was heroin. I would submit that. Is that your challenge? Yes. I would say that the, from the record, and I, looking at page 31 of the opening brief, I think that all, all the trier of fact could have known, beyond a reasonable doubt anyway, is that Mr. Bartz had previously ingested balloons containing substances that he had passed. He said that. And they were never recovered. After passing those five balloons, he had a medical emergency. It was revived by Narcan and ER blood and urine screens indicated the presence of amphetamine and opiates. That's what is available to the record right now. And we have the, I guess, one of the investigators saying that the, the substances had, or had an appearance consistent with methamphetamine and heroin. I just respectfully submit that is not, that is, creates a reasonable suspicion that doesn't establish the nature of the substance beyond a reasonable doubt. I would submit that and save my remaining time for any rebuttal. All right. Thank you very much. Ms. Bockhurst. Yes. Good morning, Your Honor. May it please the court. Your Honor, the evidence clearly establishes in this case that the district court did not err in denying the motion to suppress and finding that the statements were not, there was no Miranda violation in the statements taken from Mr. Barnes while he was in the emergency room. And the overwhelming evidence supports the jury. Can I ask you just about your Miranda argument? So as I understand it, the district court held there was no custody and you were arguing on appeal there was no custody. Has the government ever argued there was no interrogation? I believe there is one sentence in our brief that says there was no interrogation. That the and I would take issue with drawing a conclusion that he had decided not to answer. The testimony was that Mr. Barnes hesitated and the officer said to him, you need to answer the doctor's question, which as Your Honor has pointed out, any reasonable person standing in that room would believe that it was critical that Mr. Barnes answer the doctor's question about what substances remained inside his body, where they could burst. So you would say under Innis, there's no sort of reason. No, it's not. I can't remember what is the standard under Innis, whether it's like objectively likely to produce a response, basically. I mean, I would think that telling someone if you don't answer the question, they're going to have to operate on you probably passes that test. Well, the test is, is the statement such that it the will of the defendant is overboard? I'm sorry, I thought that's for voluntariness. I was talking about whether it was an interrogation. How is that not an interrogation? Isn't it reasonably, I mean, he said it to make the guy talk and did talk and it was reasonably likely I would think that threatening someone with surgery is going to kind of make them talk. Officer Woodard did not have the, I mean, Officer Woodard. I thought the hard questions in interrogation are where you don't expressly say, I want you to say that. I think I will not, I'm not going to argue that point. I think I don't disagree with what you've just said. He does expressly say it, but the threat that he makes is not one that he can carry through on. And so I think, yes, our argument really goes to whether or not he's in custody and whether the statements are voluntary, not to whether, I mean, I do not think our arguments rest in any way, shape or form on whether it is or is not an interrogation. Although I think the fact that it is the doctor's question and not a question designed as part of an investigation, as a part of trying to get to the bottom of what crime occurred, is one of the circumstances that the court should consider in applying the totality of the circumstances test. I'm going to preface this by saying I don't know if this matters. So you don't need to fight me on whether this matters because I'm not positing that it matters. But do you agree as a factual matter, no surgery was ever done and there's no evidence in the record that the doctors ever contemplated doing it? There is no evidence in the record that the surgery was done or that the doctors contemplated, but there is also no evidence in the record as to what would have happened had he not passed it. And so there is no evidence to establish that it is a false, that Officer Woodard's assertion was false because clearly you cannot leave balloons containing poisonous substances inside of an individual. So some other action would have to be taken if this soap suds enema had not worked and we just simply do not know what that action would be. And I do think it's significant that the doctor did not correct Officer Woodard when he said that. He didn't say, no, no, no, no, we're not talking about surgery or any other statement to suggest that it is an unreasonable conclusion that they may get to the point of the surgery. Can I ask you a question about voluntariness that I really have not been able to run down to my satisfaction. So we know from Connolly and Cristobal that coercion becomes a constitutional problem only if it's police created, right? If the background circumstances are coercive, we don't charge that to the police. That's fine. And so I think the district court made a finding that accredited the officer's testimony, and very hard for us to look behind that, that when this officer introduced the prospect of surgery into the discussion, he did not do that in order to get a confession. He had no bad intent. He was doing it because he was concerned for the medical well-being of the defendant. Is that dispositive as to whether any coercion created by that statement counts as coercive? Do you know what I'm saying? Is it possible for a police officer in good faith to create additional coercion under the involuntariness test? I think it is probably possible. I don't think that that is what happened here. And I think that the significance of the district court's findings in that regard is that the manner in which the statement is made to him is, it showed his concern for Mr. Barnes's safety, not, I'm attempting to coerce him. That's interesting. So the intent is relevant here because it goes to how a reasonable person would have understood that statement. Yes. Can I ask you about a sufficiency challenge that is nonetheless bothering me a little bit? So let me preface this by saying this claim hasn't been preserved. It was expressly disclaimed, but I want to ask. So the evidence of amphetamine is a positive, as far as I can tell, the only evidence of amphetamine is a positive test for amphetamines, right? But the testimony is also the case that meth breaks down to amphetamines in the equally consistent with two possibilities. One possibility is that he swallowed heroin and meth and the other is that he swallowed heroin, meth and amphetamines. The evidence is completely consistent with both of those. Yes, it is. Am I also right that the evidence provides no way of differentiating between those? Like I know you're going to say a jury is allowed to find blah, blah, blah. Sure. But a jury has to have some basis to decide between the thing one and two. And on what basis in this case would the jury have for deciding that it was heroin, meth and amphetamines, not just heroin and meth? I think just that there is overwhelming evidence it's heroin and methamphetamine. Totally. Let's pause it for the sake of this question that I agree with you. There's overwhelming evidence of heroin and meth. And then the jury could also conclude that because of the urinalysis, there is also substantial evidence that he possessed. Substantial evidence isn't enough. It has to be clear beyond a reasonable doubt. And how could that possibly be true? I mean, the government's whole argument on why there's evidence of meth is the amphetamine screen. That amphetamine, the government says, that's the meth broken down. So how does a jury know beyond a reasonable doubt? No, it's not. It's actually he took Sudafed on top of everything else. There is no other evidence in the record to support the amphetamine charge other than the urinalysis. And I think that the reason that the government pursued all three counts of possession and all three drugs is because if the jury rejected his statement or rejected the appearance, then there is still. So I guess the hypo I've come up with before is if imagine we imagine. I mean, what's complicated here is that meth is itself a crime. So, like, imagine a world in which meth is not a crime. Imagine a world in which there's two possibilities. One is that I took a perfectly legal substance that breaks down to something in the body. And the other possibility is that I took the illegal substance and all the facts. So I guess let's just posit meth isn't illegal. Counterfactually, that meth isn't illegal. Keep everything else the same in this case. In a world where there's evidence that is equally consistent and that there's evidence that is consistent with guilt and with innocence, and the evidence provides no mechanism by which you could determine if it's the guilt fact or the innocence fact, you would agree there would be insufficient evidence in that situation. Yes, I would agree with that. I think in that instance, then that's your choice. You believe one and he's not guilty. And the record provides you no basis on which to conclude it's one versus the other. It's equally consistent with both. And I think one of the key points to keep in mind is this concern does not affect count four. Because in count four, all the government needs to prove is that it is one or two substance and there's overwhelming evidence that it's schedule one or two. The jury was properly instructed they need to be unanimous as to which substance. And so if there's insufficient evidence for amphetamines, it doesn't affect the drug distribution count. It would only affect count two. Anything else you want to tell us about, Ms. Buckhurst? No, if you have no further questions. All right, Mr. Cormier. You've got some rebuttal time. I would like to address Your Honor's question about whether this was an interrogation. And I know that I'm splitting hairs here. When I said before, it was different when the doctor was asking. We know when the doctor asked Mr. Barnes, he declined to answer. And I think then when the officer asks him the same question, I think, and I know that splitting hairs, I think that's when it becomes an interrogation. And that's when he becomes in custody for purposes of Miranda. In looking at the Howes case, to determine whether someone's in custody, the Howes Supreme Court says, when a prisoner is questioned, we know just because he's in custody in a prison, he's not in custody for purposes of Miranda. But when a prisoner is questioned, the determination of custody will focus on all the features of the interrogation, including the language used and the manner in which the interrogation is conducted. That's from Howes. I think if we look at the language used and the manner of the interrogation in this, and I agree it's an isolated moment here, but I think that makes it an interrogation and Mr. Barnes becomes in custody for purposes of Miranda. And with respect to the voluntariness, again, we know that Mr. Barnes had already declined to answer the questions from the doctor. So whether his will was overborne is a determination of voluntariness. And I respectfully submit, and again, I know I'm splitting a hair here, but when it's markedly different when the officer comes in and says that there is an emergency medical situation here that I don't believe the record supports, I think that is enough of coercive activity that overcame Mr. Barnes's will to make him say what he'd already declined to say before. And with those final comments, I'll answer any other questions to the best of my ability. Thank you for your time. Thank you. Mr. Cormier, I note that you are court appointed and I want to express the court's appreciation to you for undertaking representation in this case. I want to thank the VMI cadets for their attention. I didn't see anybody nod off too long. So I hope you have an interest in the legal career. We haven't done anything today to dissuade you. So with that, I'll ask the courtroom deputy to adjourn the court sine die and come down and greet counsel. This honorable court stands adjourned sine die. God save the United States and this honorable court.
judges: G. Steven Agee, Pamela A. Harris, Toby J. Heytens